REINHART v. IDEAL PURE MILK COMPANY, INC.

[No. 19,742. Filed November 14, 1963.]

*John G. Bunner,* of Evansville, for appellant.

*Isadore J. Fine, Joe S. Hatfield, Charles H. Sparrenberger* and *Eugene P. Fine,* all of Evansville, for appellee.

KELLEY, J.—This action was duly commenced by appellant against the appellee and two of its employees, seeking damages for personal injuries allegedly sustained by reason of the negligence of appellee and said employees. In material substance, appellant's amended complaint charged that two named employees of appellee, "while in the course of their employment" with appellee ran down a sidewalk on Walnut Street in the city of Evansville, Indiana, and at the intersection of said sidewalk with the sidewalk on Eighth Street in said

city, ran into appellant and struck her with great force as she walked along said sidewalk on Eighth Street, knocking her down to the sidewalk and "causing her severe bodily injuries," as alleged. The amended complaint counted upon nine grounds of negligence.

The issues, appropriately closed, were submitted for trial by jury. At the conclusion of appellant's evidence, the appellee moved the court to instruct the jury to return a verdict in its favor and requested the court to give "Instruction No. A," submitted with the motion. The court sustained appellee's motion for a directed verdict and gave said "Instruction No. A." The instruction advised the jury that the court had concluded that appellant's evidence was not sufficient to sustain the material allegations of her complaint and instructed the jury to return the form of verdict prepared for its convenience. The prepared verdict read: "Upon the instruction of the court, we, the jury, find for the" appellee.

The action was dismissed as to the two employees.

The jury returned the said verdict and the court thereupon rendered judgment that appellant take nothing and that appellee recover its costs. Appellant's motion for a new trial was overruled and this appeal followed.

Appellee urges that the specification of appellant's motion for a new trial charging error in the court "in sustaining the defendant's (appellee's) motion . . . to instruct the jury to return a verdict for the" appellee, and in giving "instruction No. A," is insufficient and presents no error because it does not predicate error "upon the action of the trial court in directing a verdict" or show specific objections to the giving of said instruction, all as provided by Rule 1-7.

The last clause of said Rule 1-7, is in these words:

"The court's action in directing or refusing to direct a verdict shall be shown by order book entry. Error may be predicated upon such ruling or upon the giving or refusing to give a written instruction directing the verdict."

The record herein discloses that the court sustained appellee's motion for a directed verdict and "reads to the jury Instruction No. A." It further appears from the record that said "Instruction No. A" was a written instruction and directed a verdict for appellee. Thus the record shows the "court's action in directing . . . a verdict" and that it gave a "written instruction directing the verdict." We do not conceive that said Rule 1-7, as phrased, contemplates or requires specific objections to a written instruction directing a verdict. As the rule is worded, the available error, as a cause for a new trial, lies in the "giving" by the court of a "written instruction directing the verdict" and not in the giving of an instruction over "specific objections," as provided in the first clause of said Rule 1-7. We are inclined that the effect of the said quoted last clause of said Rule 1-7 was to particularize and withdraw instructions directing a verdict from the requirements laid down in the first clause of the rule for the assertion of error with respect to other instructions. We think that the specification in appellant's motion for a new trial charging error in the giving by the court of the "Instruction No. A" directing a verdict for appellee is sufficient to present the question.

The primary question sought to be presented for determination on this appeal is whether there was some substantial evidence upon which the jury might have returned a verdict for appellant. Appellant's whole argu-

ment is devoted to her contention that there was evidence which should have gone to the jury in support of two issues she asserts were tenderéd by her amended complaint, namely, (1) that the two employees of appellee were acting within the scope of their employment at the time of the occurrence resulting in appellant's injuries for which she seeks to recover; and (2) that appellee was guilty of negligence "in failing to warn and instruct its employees with respect to the necessary care in performing their duties on or near the public sidewalk adjacent to appellee's place of business, knowing that its business was transacted daily on or near said sidewalk."

The pertinent evidence as found in the briefs of the parties establishes, in substance, the following material facts. The appellee had, among others, two employees named Henry Hudson and Donald Dorris. Hudson was employed in a "supervisory capacity." Dorris was employed in the shipping department.

The appellee is engaged in the processing and distributing of milk products in Evansville, Indiana, with principal office at 201 S. E. Eighth Street in said city. The building in which appellee carries on its business is so located that one of its sides extends along Walnut Street and another side extends along Eighth Street in said city, and said sides come to a point at the intersection of said Eighth and Walnut streets. The loading dock for the loading of trucks at appellee's plant is located on said Walnut Street, some twenty-five feet back from the corner of said building at the said intersection of Walnut and Eighth streets. There is a public sidewalk on said Walnut Street which runs along the side of appellee's building and extends to and intersects with a public sidewalk running along the side of ap-

pellee's building on said Eighth Street. Appellee's building is flush with the inner edge of the two sidewalks at the point of their intersection. It is at this point of these intersecting sidewalks that the occurrence took place which appellant testified resulted in her personal injuries.

On September 15, 1959, at a time between 12 o'clock noon and fifteen minutes thereafter, a truck was being loaded at appellee's said loading dock on Walnut Street. Said Donald Dorris was putting the milk on a conveyor belt to the truck, one Dick Owens was loading the milk on the truck, and said Henry Hudson was standing on the Walnut Street sidewalk "supervising the job." Dorris was paid on an "hourly basis" and he "had no specific time to go to lunch. I went when things were caught up so that I could get away." Hudson was paid "on a flat monthly rate . . . it didn't matter how many hours I worked, I got the same rate." The latter "Had no lunch hour . . . I had no specific time to eat lunch, I ate lunch any time I could get it."

At approximately 12:15 o'clock P.M., on said September 15, 1959, Dorris "put the last milk on the conveyor" and "at the time this took place I had punched the time clock and I was on my way to lunch . . . I had already punched out." When he "got ready to get off the loading dock" there were "a few joking remarks—kidding remarks passed back and forth" between him and Hudson. Then Dorris "jumped off the dock" and "started running" toward Hudson. The latter, as appellant's witness, said: "I guess you would say at that time Donald Dorris was chasing me. We were engaged in horseplay, that would be a term for it." They ran on the sidewalk from the point of the loading dock on Walnut Street to the corner where the

sidewalks of Eighth Street and Walnut Street intersected, a distance estimated in the evidence at twenty-five feet.

At the time Dorris was "chasing" Hudson on the Walnut Street sidewalk, appellant, then sixty-five years of age, was walking along and upon the Eighth Street sidewalk and was approaching the corner of appellee's building at the intersection of said sidewalks. When she was "about three or four steps" from the corner, Hudson, then about five or six feet in front of Dorris and being "chased" by him, "came around the corner" and ran into the appellant, knocking her down to the sidewalk. Hudson picked her up, took her "inside the office," and then went upstairs and reported the matter to a Mr. Ashby and Mr. Fischer. Under instructions from the latter, Hudson remained upstairs until appellant was removed from the office, which was a period of time of some fifteen minutes.

After the aforesaid occurrence, Dorris "went across the street to lunch." Hudson testified that after the occurrence "maybe fifteen minutes or more afterwards" he returned to the "conveyor belt"; that "had I not struck Mrs. Reinhart, I would have returned to the conveyor belt. The job of loading was not yet quite finished. . . . After this accident took place we went ahead and finished the work. . . . My work was back at the loading dock and that is where I returned and finished after this took place. . . . My work or my duties for Ideal Pure Milk Company did not require me to go up Walnut Street to the corner of Eighth and Walnut Streets on this occasion."

It seems clear from the referred to evidence, and appellant makes no argument to the contrary, that at

the time and place of the collision with the appellant, said Dorris was not acting within the scope of his employment nor performing any duty or service for appellee incidental to or connected therewith. He had "punched out" by the time clock and was on his way to lunch. While on his way, he engaged in "horseplay" with Hudson and was "chasing" the latter by running after him upon the sidewalk. There is no evidence, and appellant points to none, which would support a reasonable inference that Dorris, in his activity, was so acting with the intention of performing the same as a part of or as an incident to any phase or part of his employment or to serve the interests of his employer.

In the argument portion of her brief, appellant mentions two phases of the evidence upon which she apparently relies as establishing that Hudson, at the time of the involved occurrence, was acting within the scope of his employment. She refers to the testimony of Hudson that "had the incident with" the appellant "not occurred, he would have returned to the conveyor belt and finished supervising the loading of the truck"; and that Hudson at the time "was not on his lunch hour." No authorities are applied by appellant to either of said evidentiary references. She cites authorities to the one bald legal proposition that "the question of whether or not an employee is acting within the scope of his employment when committing a wrongful act so as to hold the master liable is for the jury to decide." As a general statement of a legal principle, there would be no inclination to dissent therefrom. The difficulty encountered is, of course, the application of the stated rule to appellant's evidence. In this regard, appellant renders little assistance, although the burden rests upon her to establish her asserted er-

ror by the record and in accordance with the pertinent prevailing rules of the Supreme Court.

In the determination of whether there was some legal evidence which should have gone to the jury on the issue of appellee's liability for the alleged negligent acts of its employees, under the doctrine of respondeat superior, the mere statement of Hudson that he would have returned to finish supervising the loading of the truck but for the incident with the appellant, is without determinative legal significance unless it be considered in connection with the other evidence as to the circumstances which occasioned his original departure from the place and position he occupied in performing his duties as such supervisor. Appellant offers no cogent argument, supported by applied authorities, that there was evidence or reasonable inferences afforded thereby from which the jury could have found that the circumstances surrounding the leaving by Hudson of his place of immediate employment and running along the Walnut Street sidewalk for a distance of twenty-five feet to the corner intersection at Eighth Street were such as to warrant the conclusion by the jury that Hudson was then acting within the scope of his employment or was then performing an act or service incidental thereto. The omission by appellant in this regard renders it imperative for us to hold that the now considered assigned error by appellant "shall be deemed to be waived." Rule 2-17 (e) and (f). *Wright* v. *State* (1958), 237 Ind. 593, 595, pt. 1, 147 N. E. 2d 551.

In view of the fact that this appeal arose out of a directed verdict against appellant, we deem it proper, notwithstanding said non-compliance with the rules, to observe that in our opinion appellant's evidence leads to the inevitable conclusion that

there was an entire absence of proof that Hudson, at the time he ran into and collided with the appellant, was acting in the line of his duties as an employee of appellee. Considering as true all the facts which the evidence tends to prove and accepting all reasonable inferences which the jury might draw favorable to appellant, we think it is clearly and definitely established by said evidence that at said time Hudson had deviated and departed from his designated work for appellee to engage in a frolic of his own, described by him as "horseplay," and that he was then acting on his own volition, not as an employee or servant of appellee but as an independent individual. Under the Indiana holdings, as we interpret them, the fact that Hudson intended to and did return to his work for appellee after his departure therefrom, is insufficient, of itself, when considered in the light of the evidence as to the cause, purpose and reason for his original turning aside from his work, to establish a legal basis for liability of appellee for Hudson's act in running into and colliding with appellant. *Wells* v. *Northern Indiana Public Service Co.* (1942), 111 Ind. App. 166, 168, 40 N. E. 2d 1012; *Polk Sanitary Milk Co.* v. *Berry* (1938), 106 Ind. App. 29, 35, 36, 17 N. E. 2d 860; *Sears* v. *Moran* (1945), 223 Ind. 179, 183, 59 N. E. 2d 566; 35 Am. Jur., *Master and Servant*, §555, p. 989; 12 I. L. E., *Employment*, §232, notes 26 and 27 on page 246.

The announced theory of appellant's said issue number (2), above, is that the appellee was "independently" liable for failure to warn and instruct its employees with respect to "necessary" care in performing their duties on or near the sidewalk, and that there was evidence in support of such issue. The negligent acts charged in the amended complaint against appellee relative to said asserted issue are, in substance: (g) that

appellee carelessly and negligently "failed to warn and instruct" its employees to use due care *"with respect to pedestrians using the public sidewalk* adjacent to" appellee's place of business; (h) that appellee carelessly and negligently *"used a portion of the public sidewalk . . . adjacent to their place of business for loading and unloading milk products"* and "failed to warn or instruct their employees as to proper conduct to be used by said employees when they were *working* on or near said public sidewalk"; and (i) that appellee *"knowing that their employees . . . had on previous occasions engaged in horseplay* while in the course of their employment *failed to warn* said employees of the danger of such conduct *to the public,* including" appellant. (Emphasis supplied).

In the argument portion of her brief appellant says that the testimony discloses that appellee was the owner of the property located at the corner of Eighth and Walnut streets in Evansville and "at the time in question" appellee's supervisor, Henry Hudson, *"was standing on the sidewalk* supervising the loading of a truck" and that "it was not infrequent for the appellee's agents *to stand on the sidewalk* in the course of loading trucks." This referred to evidence is of no help to appellant's presently considered contention of error since the record shows that the occurrence complained of did not take place while Hudson was "standing" on the sidewalk supervising the loading of a truck. As alleged in appellant's amended complaint and as appears from the evidence, Hudson and Dorris, the two employees of appellee, ran down the sidewalk on Walnut Street and collided with appellant at the intersection of Walnut and Eighth streets "some twenty-five feet" from the point where Hudson was "standing on the sidewalk on the Walnut Street side of appellee's plant super-

vising the loading of a truck." (Quotations are from appellant's brief. Emphasis supplied.)

Appellant next cites Indiana authorities to the effect that the occupier or possessor of land adjacent to or in close proximity of a public highway or street owes a duty to the traveling public and users of the highway and street to exercise reasonable care for their protection, and to so use the property as not to interrupt or interfere with the exercise by them of the right to use the highways and streets, by creating or maintaining a condition that is unnecessarily dangerous.

We are at a disadvantage to appreciate the application of the cited authorities to the facts as alleged in appellant's amended complaint and to the circumstances shown by the evidence. If it be accepted that the two employees of appellee are to be considered as property possessed and used by appellee, some approximation of the doctrinal inclination of the submitted authorities to the problem here apparent would be within the realm of realistic comprehension. None of said authorities are applied by appellant to the factual evidence as required by Rule 2-17 (e). The only statement we find in appellant's brief concerning such application is that the "appellee either knew or should have known of the danger to the public caused by its employees working on or near the sidewalk." But, as we have previously said, the evidence does not show, nor does appellant refer us to any such evidence, that the occurrence resulting in appellant's alleged injuries was caused or brought about by the fact that appellee's employees were "working on or near the sidewalk." It may be fairly stated, we think, that it appears that said employees started their run on Walnut Street from the point where they had been working. But nowhere do we find that the

danger to appellant arose out of or was connected with the work of the employees at appellee's loading dock on Walnut Street.

It is incumbent upon appellant on this appeal to establish that there was some substantial evidence tending to support one or more of the acts of negligence charged to appellee by the amended complaint and that, therefore, the court erred in directing a verdict for appellee. However, appellant, other than to cite and quote from the aforementioned authorities as to the due care required of the possessor or user of property, has tendered no argument or authorities in support of the alleged duty of appellee to "warn" and "instruct" its employees in regard to their acts and conduct in the particulars alleged in the aforesaid rhetorical clauses (g), (h) and (i) of the amended complaint. We are left with the industry of searching for any such authorities. Nor has appellant applied any of the evidence to the said several alleged acts of negligence, for the purpose of establishing that there was evidence in support thereof.

Without noting or suggesting particular application, appellant quotes from the testimony of Henry Hudson "upon the issue of the appellee's negligence in failing to instruct their employees as to proper care to be used *when working on or near the sidewalk*." (Our emphasis). The quoted testimony is as follows:

"Q. Did Ideal Pure Milk Company ever promulgate any rules that you know of regarding the conduct of employees when they were on the sidewalk there?

A. I suppose so, yeah.

Q. You suppose so. Do you know whether or not they did?

A. Well, in various training schools naturally rules of conduct were discussed.

> Q. Did they ever specifically advise you as to conduct with regard to working near the sidewalk or the public street there?
>
> A. No."

Assuming for the moment and for the purpose of the present enquiry, without any authority suggested or cited by appellant, that a failure of an employer to give the alleged warning and instructions to its employees constitutes an act of negligence, it seems fitting to survey the quoted testimony with reference to the several allegations, (g), (h) and (i), of the complaint. The testimony establishes without contradiction that appellee did promulgate rules "regarding the conduct of employees *when they were on the sidewalk there.*" What these rules were or may have been or to what particular "conduct" of the employees they may have been addressed does not appear. The first question apparently limits the enquiry to promulgated rules of conduct of the employees at the time they were on the "sidewalk there." To what part, section or location of the sidewalk the adverb "there" refers does not appear nor does it appear whether the sidewalk referred to was on Walnut Street or Eighth Street. Similar difficulty is experienced with regard to the third question. That question was personal to the witness and sought to elicit whether he had been "advise(d)" as to conduct with regard to "working" near the sidewalk or public street "there." The negative answer of the witness must be accepted in the light of the question, as worded. It appears, then, that the witness stated that he had not been specifically advised by appellee as to conduct with regard to "working" near the sidewalk.

Rhetorical clause (g) of the amended complaint alleged failure by appellee to warn or instruct its employees "with respect to pedestrians" using the side-

walk "adjacent" to appellee's place of business. We find nothing in the said quoted testimony, or any reasonable inference therefrom, to support said charge of negligence. It appears, rather, that appellant's evidence established that appellee did "promulgate" rules of conduct for employees when they were on the sidewalk.

Rhetorical clause (h) of the amended complaint alleged that appellee used a portion of the adjacent sidewalk for loading and unloading milk products and that appellee failed to warn or instruct the employees as to "proper" conduct when they were "working" on or near the public sidewalk. While the third above quoted question and the answer thereto may be regarded as having been adduced in support of said clause (h), appellant's brief and evidence established that the occurrence which allegedly resulted in her injuries did not take place at the place where the employees were working or on the public sidewalk near thereto, but some twenty-five feet away therefrom and on the sidewalk on Eighth Street which was not adjacent to the place on Walnut Street where the truck was being loaded.

Rhetorical clause (i) of the amended complaint charged that appellee "knowing" that the employees had previously "engaged in horseplay" while "in the course of their employment" failed to "warn" the employees of the dangers of "such conduct" to the public, including appellant. We find nothing in the testimony or evidence quoted or referred to by appellant which sustains the allegation that appellee knew that the employees had previously engaged in horseplay. Nor do we perceive any evidence to sustain the allegation that appellee failed to warn the employees of "such conduct." Appellant has directed our attention to no such evidence and, insofar as appellant's brief and argument are responsive, there appears no evidence whatsoever, nor

any reasonable inference, in support of said allegation of negligence.

In our opinion, appellant has failed to properly demonstrate and show by the record and under the requirements of Rule 2-17(e) any error of the court in directing a verdict for the appellee.

Judgment affirmed.

Mote, C. J., Hunter and Pfaff, JJ., concur.

NOTE.—Reported in 193 N. E. 2d 655.